UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PANTHER BRANDS, LLC, and <br> PANTHER RACING, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> INDY RACING LEAGUE, LLC doing business as INDYCAR, <br> RAHAL LETTERMAN LANIGAN RACING, LLC, <br> DOCUMENT AND PACKAGING BROKERS, INC., doing business as DOCUPAK, <br><br> Defendants. | Case No. 1:14-cv-00472-TWP-TAB |

## ENTRY ON MOTIONS TO DISMISS

This matter is before the Court on several Motions to Dismiss filed by Defendants Rahal Letterman Lanigan Racing, LLC ("Rahal") (Filing No. 55), Indy Racing League, LLC ("IndyCar") (Filing No. 61), and Document and Packaging Brokers, Inc. ("Docupak") (Filing No. 63)[1]. Plaintiffs Panther Brands, LLC ("Panther Brands") and Panther Racing, LLC ("Panther Racing") (collectively, "Panther") filed this action against Defendants alleging breach of contract, interference with contract, unjust enrichment, conversion, unfair competition and bid rigging arising from a sponsorship agreement between IndyCar and Panther Brands. For the reasons set forth below, Defendants' motions to dismiss are **GRANTED**.

---

[1] The Motion to Dismiss for Lack of Jurisdiction (Filing No. 49) filed by Defendant United States of America is **DENIED** as moot. The United States was terminated as a defendant on July 18, 2014 upon Plaintiff's filing their Amended Complaint which contained no claims against the United States.

# I. BACKGROUND

The following relevant facts are from Plaintiffs' Amended Complaint ([Filing No. 51](#)) and are accepted as true for purposes of these motions to dismiss. IndyCar is the sanctioning body for the Indy Racing League race car series, a role it has served since 1996. Panther Racing is an IndyCar race team, and Panther Brands is a marketing services and brand management company that provides such services to Panther Racing and its sponsors. Rahal is also an IndyCar race team and a competitor of Panther Racing. Docupak is a subcontractor of Laughlin Marinaccio and Owens, Inc. d/b/a/ LM&O Advertising ("LM&O").

On an annual basis, IndyCar enters into sponsorship agreements which identify the specific marketing benefits for the use of the race teams and the race teams' sponsors. The marketing tools and benefits provided by IndyCar to race teams and their sponsors include, but are not limited to, at-track presence within the "Fan Village" at all United States racing events; advertising space in event programs; use of photographs and video footage for promotional purposes; radio advertisement time; website advertisement space; safety car rides around the track; placement of the sponsor's marks on equipment, marketing collateral, and safety trucks; and the right to be a promotional partner of IndyCar and the IZOD IndyCar Series.

One important benefit provided to sponsors is access to the "Fan Village" or "Fan Zone," which is an area designated for use by parties who have entered into sponsorship agreements to market their businesses to IndyCar fans. Race teams and their sponsors are allowed to establish promotional displays and exhibits, and food and entertainment is provided for the purpose of enhancing the fans' experience at race venues during practice, qualification, and race days at all United States events. The Fan Village includes sophisticated systems for gathering marketing information and feedback from race fans. For example, in 2013, 300,000 fans registered and

visited the IndyCar Fan Village. Access to the Fan Village is a valuable and highly coveted component of the IndyCar sponsorship agreements.

From 2008 through 2013, the Army National Guard ("ARNG" or "National Guard") sponsored Panther Racing in the IndyCar series, including the Indianapolis 500 Mile Race. ARNG utilized its IndyCar sponsorship for the purpose of marketing its "Guard Strength Sustainment Division," whose specific mission was to assist in the recruitment of ARNG enlistees, and to assist in the retention of ARNG members. ARNG unilaterally determined the sponsorship amount for each year, which was accepted by Panther without negotiation or input, in exchange for various promotional benefits from IndyCar through Panther. As part of the sponsorship arrangement, Panther developed, coordinated and administered multiple racing-based programs to procure direct contacts between interested IndyCar fans and ANRG recruiters. Panther's programs were also initiated to link employers with National Guard soldiers to provide employment opportunities to these individuals in need of jobs when not deployed, and to encourage the employment of National Guard soldiers upon their separation from National Guard service.

Panther Brands entered into a sponsorship agreement with IndyCar for the 2013 racing season (the "2013 Sponsorship Agreement"). ([Filing No. 51-1](Filing No. 51-1).) The term of the agreement was January 1, 2013 through December 31, 2013 (the "Term"). Panther Brands paid approximately $1.7 million dollars as consideration for the 2013 Sponsorship Agreement with the understanding that ARNG would primarily receive the promotional benefits set forth in Exhibit B of the agreement. ([Filing No. 51-1, at ECF pp. 10-14](Filing No. 51-1, at ECF pp. 10-14).) At issue in this case is Section 9.15 of the 2013 Sponsorship Agreement, which states:

> INDYCAR agrees that, other than through Panther Brands, it will not enter into sponsorship agreements during the Term and for a period of one (1) year following the Term with the following Panther Brand clients: National Guard, Lincoln Tech, Drash, TriWest, Oracle and Emergent. It is understood and agreed that the forgoing

3

> limitation extends to agreements for the benefit of the sponsors listed in the preceding sentence with agencies or companies representing such sponsors (other than Panther Brands), including, without limitation Document Packaging Brokers, Inc. and LM&O Advertising.

([Filing No. 51-1, at ECF p. 7](#).) Panther alleges that this provision grants it the exclusive right to obtain and provide sponsorship benefits for IndyCar events to ARNG in 2014, including Fan Village access.

In September 2013, ARNG began the process of soliciting bids for the 2014 IndyCar racing season. One of ANRG's requirements was Fan Village access. The 2014 ANRG sponsorship requirements were sent by Docupak to Panther on September 3, 2012. The bid request required a formal written response from Panther by September 6, 2013.

## II. LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court examines the sufficiency of the complaint, not the merits of the lawsuit. *United States v. Clark Cnty., Ind.*, 113 F. Supp. 2d 1286, 1290 (S.D. Ind. 2000). The court will dismiss a complaint for failure to state a claim if it "'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Hamlin v. Vaudenberg*, 95 F.3d 580, 583 (7th Cir. 1996) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). When reviewing a 12(b)(6) motion, the court takes all well-pleaded allegations in the complaint as true and draws all inferences in favor of the plaintiff. *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008) (citations omitted). However, the allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere*

*& Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citations omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

### III. DISCUSSION

Panther asserts a breach of contract claim against IndyCar in Count I of their Amended Complaint, alleging that IndyCar repudiated the 2013 Sponsorship Agreement by drafting a letter to Rahal on November 11, 2013, stating that IndyCar could provide Rahal with Fan Village access for ARNG as a sponsor of Rahal in 2014. Count II asserts a claim against Rahal for interference with contract, alleging that Rahal was aware of the existence of the 2013 Sponsorship Agreement and induced IndyCar to breach the agreement by requesting the November 11, 2013 letter. Count III asserts claims against Rahal, IndyCar and Docupak for unjust enrichment and conversion,[2] asserting that Rahal and Docupak falsely represented that Rahal could provide Fan Village access and other marketing benefits to ARNG, and that Defendants misappropriated Panther's exclusive contractual rights. Count IV, asserted against Rahal, IndyCar and Docupak, is a claim for unfair competition and bid rigging in violation of Ind. Code § 35-43-5-11, based upon Panther's assertion that Defendants conspired with each other to improperly and unlawfully influence and alter the bid award process for the 2014 ARNG sponsorship.

### A.   Breach of Contract/Anticipatory Breach

All of Panther's claims hinge upon whether IndyCar breached the 2013 Sponsorship Agreement, as Panther's claims are all based upon the assumption that they had the exclusive right to provide the benefits under the sponsorship agreement to ARNG in 2014, including Fan Village access, based upon the language in Section 9.15 of the 2013 Sponsorship Agreement. Whether

---

[2] It is not clear why Panther included two causes of action in a single count for both Counts III and IV of the Amended Complaint, nor is it clear which factual allegations support which cause of action.

5

Panther has asserted a viable breach of contract claim primarily depends upon the Court's interpretation of Section 9.15, which the parties agree is not ambiguous and thus may be interpreted by this Court as a matter of law. *Allen v. Cedar Real Estate Grp., LLP*, 236 F.3d 374, 379 (7th Cir. 2001) (a contract provision is not ambiguous simply because the parties disagree on its meaning). In interpreting the contract, the Court must "read the contract as a whole and construe the language as not to render any words, phrases, or terms ineffective or meaningless." *Murat Temple Ass'n, Inc. v. Live Nation Worldwide, Inc.*, 953 N.E.2d 1125, 1129 (Ind. Ct. App. 2011).

In viewing the 2013 Sponsorship Agreement as a whole, the Court finds that the contract does not grant Panther the exclusive right to provide Fan Village access to ARNG for 2014. When determining which interpretation is more "consistent" or "harmonious," the court must adopt the construction which appears to be in accord with justice, common sense and the probable intention of the parties in light of honest and fair dealing. *Reith–Riley Constr. Co. v. Auto–Owners Mut. Ins. Co.,* 408 N.E.2d 640, 645 (Ind. Ct. App. 1980). In addition, courts tend to disfavor contracts that impose a restraint on trade. *Standard Register Co. v. Cleaver*, 30 F. Supp. 2d 1084, 1093 (N.D. Ind. 1998); *see also Howard D. Johnson Co. v. Parkside Dev. Corp.*, 348 N.E.2d 656, 660 (1976) ("[A] restraint on trade . . . will be enforced by the courts only if the covenant is positively expressed. Even then, it will be narrowly construed."). Panther argues that Section 9.15 should be interpreted to mean that IndyCar cannot enter into any agreements—with ARNG, another race team, or a company representing ARNG—that would allow ARNG to have access to the Fan Village. The interpretation proposed by Panther would prevent ARNG from having access to "a valuable and highly coveted component of the IndyCar Sponsorship Agreements" through anyone besides Panther Brands. (Filing No. 51, at ECF p. 9.)

Panther's interpretation of this provision of the 2013 Sponsorship Agreement is problematic for a number of reasons. First, there is no mention of Fan Village access in Section 9.15 or a limitation specifically on that sponsorship benefit. Section 9.15 states that "INDYCAR agrees that, other than through Panther Brands, it will not enter into *sponsorship agreements. . . .*" ([Filing No. 51-1, at ECF p. 7](#)) (emphasis added). The agreement only generally mentions sponsorship agreements, not "Fan Village access." As stated in Panther's Amended Complaint and shown by the 2013 Sponsorship Agreement, the sponsorship agreements grant a host of marketing benefits to sponsors, not just Fan Village access. Panther argues that the right to control 2014 Fan Village access to ARNG was not conditioned upon ARNG remaining Panther's sponsor; however, there is nothing in this provision, or anywhere else in the contract, that states that this benefit is severable from the other marketing benefits, or that this specific right was reserved to Panther.

Second, if the Court were to accept Panther's interpretation and find that Section 9.15 granted Panther exclusive rights to provide all sponsorship benefits to ARNG for 2014, this interpretation would not be in accord with justice, common sense or fair dealing. *See Reith–Riley Constr. Co.*, 408 N.E.2d at 645. Based upon Panther's reasoning and the allegations in the Amended Complaint, ARNG would only be permitted to enter into a sponsorship agreement through Panther in 2014, as IndyCar would be prohibited from entering into a sponsorship agreement with Rahal, or any other race team or company, that would provide promotional benefits to ARNG. Such an interpretation would place a restriction on ARNG's freedom to contract, which is problematic because ARNG is not a party to the 2013 Sponsorship Agreement and did not receive any consideration in exchange for this limitation. ARNG would effectively be prohibited from sponsoring any other race team in 2014 because the benefits of sponsorship—promotional

7

benefits, including Fan Village access—would have to be obtained from Panther Brands, despite not being Panther Racing's sponsor. This result defies common sense and contradicts Panther's own factual allegations in its Amended Complaint, in which it states that the marketing benefits bestowed under the sponsorship agreements with IndyCar are "for the use of race teams and the race teams' sponsors that IndyCar provides *only* to race teams entering into such agreements." (Filing No. 51, at ECF p. 6) (emphasis added).

The facts show that ARNG chose not to be a sponsor of Panther Racing for the 2014 racing season, which was well within its right to do so. It would not make logical sense to require ARNG to still obtain the benefits associated with team sponsorship through Panther Brands, as it would be contrary to the purpose of the sponsorship arrangement as set forth in Panther's statement of facts. There would be no benefit to ARNG in sponsoring any other race team if it had to pay an additional amount to Panther Brands to obtain the "highly coveted component" of race team sponsorship, Fan Village access, or any other benefits ordinarily provided "only to race teams entering into such agreements." (Filing No. 51, at ECF pp. 6-9.) Nor is this separation of sponsorship from the sponsorship benefits contemplated anywhere in the 2013 Sponsorship Agreement. Thus, the Court concludes that the 2013 Sponsorship Agreement does not require ARNG to obtain 2014 sponsorship benefits, including Fan Village access, exclusively through Panther Brands, regardless of whether ARNG is required to sponsor Panther Racing or is free to sponsor another race team.

The interpretation of Section 9.15 that is most consistent with the express language of the provision, the other provisions of the 2013 Sponsorship Agreement, as well as justice and common sense, is that IndyCar itself was prohibited from entering into a sponsorship agreement with the Panther Brand clients listed in Section 9.15, including ARNG, and was prohibited from doing so

either directly or through an agency or company representing ARNG. The relevant language in Section 9.15 states, "INDYCAR agrees that . . . it will not enter into sponsorship agreements with . . . National Guard. . . . It is understood and agreed that the forgoing limitation extends to agreements for the benefit of [National Guard] with agencies or companies representing [National Guard]. . . ." ([Filing No. 51-1, at ECF p. 7](.).) The plain language of this provision prohibits IndyCar from accepting a sponsorship from ARNG and entering into a sponsorship agreement directly or indirectly with ARNG. The provision goes on to list Docupak and LM&O as examples of such "agencies or companies," and says the only company or agency that may represent ARNG under these circumstances is Panther Brands. There are no references to race teams such as Rahal, or even a general reference to Panther Racing's competitors, as being prohibited from entering into sponsorship agreements with IndyCar for ARNG's benefit. Reading the provision as a whole, the Court concludes that the parties intended to only prohibit companies similar to Docupak and LM&O from entering into sponsorship agreements with IndyCar on behalf of ARNG. *See Francis v. Yates*, 700 N.E.2d 504, 506 (Ind. Ct. App. 1998) ("Specific words and phrases cannot be read exclusive of other contractual provisions. . . . The parties' intentions must be determined from the contract read in its entirety.") (additional citations omitted).

Panther argues that Rahal fits the definition of an "agenc[y] or compan[y] representing" ANRG. As stated in the Amended Complaint, Rahal is not an agency or company in the business of representing companies in obtaining marketing services; it is an IndyCar race team. To construe a race team as a company prohibited from entering into a sponsorship agreement with IndyCar because the race team is sponsored by ARNG would place an unreasonable restriction on ARNG's freedom to contract with the race team of its choice, leading to an unreasonable result. The Court finds that the use of the words "agencies or companies" followed by the specific listing of

9

marketing and advertising agencies does not express an intent to extend this limitation to race teams.

Finally, Panther has failed to adequately plead an action for breach of contract for the additional reason that it bases the alleged breach not upon IndyCar and Rahal entering into a sponsorship agreement benefitting ARNG, but based upon a theory of anticipatory breach and/or breach based upon the tender of the November 11, 2013 letter from IndyCar Chief Executive Officer, Mark Miles to Rahal (the "Miles Letter"). Panther's Amended Complaint alleges that "IndyCar's letter of November 11, 2013 is an anticipatory breach of the exclusivity provision of Exhibit 'A'. . . " and "IndyCar breached its contract with Panther, by the November 11, 2013 Miles Letter." (Filing No. 51, at ECF pp. 19-20). The Miles Letter states, in relevant part, "You asked whether INDYCAR could provide space at the 2014 INDYCAR Fan Village for use by Rahal Letterman Lanigan Racing for your sponsor, The Army National Guard. I confirm that INDYCAR would be able to provide this space to you for the 2014 racing season." (Filing No. 51-2.)

The tender of this letter to Rahal does not constitute an anticipatory breach of the 2013 Sponsorship Agreement. A repudiation of a contract before time for performance may be an anticipatory breach where "the repudiation was positive, absolute, and unconditional." *Mullis v. Brennan*, 716 N.E.2d 58, 64 (Ind. Ct. App. 1999) (citing *Jay County Rural Electric Membership Corp. v. Wabash Valley Power Association, Inc.,* 692 N.E.2d 905, 911 (Ind. Ct. App. 1998)). "Because the doctrine of anticipatory repudiation represents a harsh remedy, the requirement that the repudiating statement be clear and absolute is a strict one." *Angelone v. Chang*, 761 N.E.2d 426, 429 (Ind. Ct. App. 2001). The Miles Letter merely stated what IndyCar believed it had a right to do, which was to grant another race team, Rahal, space in the Fan Village for its potential sponsor, ARNG. "Where two contracting parties differ as to the interpretation of a contract or as

to its legal effects, an offer to perform in accordance with his own interpretation made by one of the parties is not in itself an anticipatory breach." *Eden United, Inc. v. Short*, 573 N.E.2d 920, 929 (Ind. Ct. App. 1991) (quoting A. Corbin, Corbin on Contracts § 973 at 961-62 (One Vol. Ed.1952)). "A mere request to be released from a contract cannot act as an anticipatory breach." *Mullis*, 716 N.E.2d at 64. There was no clear and unequivocal repudiation of the 2013 Sponsorship Agreement in the Miles Letter, which was not even addressed or delivered to Panther. Even if the Court were to find that Panther had an exclusive right to provide Fan Village access to ARNG in 2014 (which, for the reasons discussed above, they did not), the Court concludes that Panther's alleged basis for its breach of contract claim is not sufficiently "positive, absolute, and unconditional" to support an action for anticipatory breach by IndyCar.

The Court concludes that the 2013 Sponsorship Agreement did not confer upon Panther the exclusive right to provide Fan Village access, or any other sponsorship benefit, to ARNG; did not prohibit ANRG from sponsoring Rahal and receiving the associated promotional benefits; and only prohibited IndyCar itself from entering into a sponsorship agreement with ARNG in 2013 and 2014, either directly or through an agency or company representing ARNG. In addition, Panther cannot state a breach of contract or anticipatory breach claim against IndyCar based upon the Miles Letter. Thus, the Court concludes that Panther has failed to state a claim against IndyCar for breach of contract because they failed to plead facts showing that Panther Brands had a contractual right that was violated by IndyCar. The motion to dismiss on Count I is therefore **GRANTED**.

B.  **Interference with Contract**

Count II of Panther's Amended Complaint is for interference with contract, which is asserted only against Rahal. Panther alleges that as a result of Rahal's actions, IndyCar breached

its contract with Panther by drafting and sending the Miles Letter. As discussed above, the 2013 Sponsorship Agreement does not support Panther's claims that it had exclusive rights under the agreement that were breached by IndyCar, nor does the Miles Letter constitute repudiation of the agreement. Therefore, Panther's interference with contract claim against Rahal also fails. The motion to dismiss on Count II is **GRANTED**.

**C.     Conversion and Unjust Enrichment**

Panther asserts conversion and unjust enrichment claims against Rahal, IndyCar, and Docupak. Panther alleges that Rahal or Docupak should not be permitted to retain economic benefits they obtained by the "sale to ARNG of contract rights belonging exclusively to Panther," and that Rahal, Docupak and IndyCar "converted" Panther's contractual rights under the 2013 Sponsorship Agreement. ([Filing No. 51, at ECF p. 21](#).) Criminal conversion occurs when one knowingly or intentionally exerts unauthorized control over the property of another person. Ind. Code § 35-43-4-3. A person who suffers pecuniary loss as a result of a violation of such conversion may bring a civil action against the person who caused the loss. Ind. Code § 34-24-3-1. "A claim for unjust enrichment 'is a legal fiction invented by the common law courts in order to permit a recovery . . . where the circumstances are such that under the law of natural and immutable justice there should be a recovery . . . .'" *Zoeller v. E. Chi. Second Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009) (quoting *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991)).

Again, both of these claims are based upon the faulty assumption that Panther had an exclusive right to provide ARNG with Fan Village access and other benefits under an IndyCar sponsorship agreement for 2014. The allegation that IndyCar received a financial benefit by selling the same contract right twice is not supported by the factual allegations and the language of the agreement, nor can it be said that the Defendants "converted" a right that Panther did not

possess. There is also no claim for unjust enrichment because the Defendants were legally entitled to the benefits that they each received, thus the retention of these benefits would not be unjust. The unjust enrichment claim against IndyCar fails for the additional reason that an express contract controlled the rights of IndyCar and Panther, and Panther cannot assert both a breach of contract claim and one for unjust enrichment based upon rights arising from the same document. *Englebrecht v. Property Developers, Inc.*, 296 N.E.2d 798, 801 (Ind. Ct. App. 1973) ("An implied contract cannot exist where an express contract covers the identical subject."). Therefore, the Court finds that Panther has not stated claims for criminal conversion or unjust enrichment, and the motion to dismiss on Count III is **GRANTED**.

**D.  Unfair Competition and Bid Rigging**

Panther asserts claims of unfair competition and bid rigging against all three Defendants, alleging that the Defendants improperly and unlawfully influenced and altered the bid award process for the 2014 ARNG sponsorship. There are two possible means by which a party may engage in unfair competition under Indiana law. First, "a claim for unfair competition may be brought when [an] employee uses 'trade secrets or other confidential information acquired in the course of his employment for his benefit or that of a competitor in a manner which is detrimental to his former employer.'" *Meridian Fin. Advisors, Ltd. v. Pence*, 763 F. Supp. 2d 1046, 1064 (S.D. Ind. 2011) (quoting *Woodward Ins., Inc. v. White*, 437 N.E.2d 59, 67 (Ind. 1982)). Second, "a cause of action for unfair competition arises when there is 'any conduct, the natural and probable tendency and effect of which is to deceive the public so as to pass off goods or business of one person as and for that of another.'" *Id.* (quoting *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 598 (Ind. 2001)).

Neither of the Indiana unjust enrichment theories are applicable under the facts alleged in this action. First, there are no allegations that a Panther employee used trade secrets or confidential information obtained during the course of his employment to benefit a competitor. Panther alleges that the point-of-contact for the ARNG sponsorship, John Metzler ("Mr. Metzler"), shared confidential information with Rahal and Docupak regarding Panther's relationship with IndyCar. However, Mr. Metzler was an employee of ARNG, not an employee of Panther, so they have not shown they have a cause of action under the *Woodward* theory of unjust enrichment. Second, there are no allegations that Defendants attempted to pass off goods or business of Panther as and for that of another, which is required under the *Felsher* unjust enrichment theory. There was no "misrepresentation" regarding Panther's rights (or lack thereof) under the 2013 Sponsorship Agreement for 2014. Panther argues that the tort of unfair competition also includes actions for interference with a contract or business relationship; however, as discussed above, Panther has not stated a cause of action for claims under these legal theories, either.

Panther has also failed to state a claim for "bid rigging." Panther alleges that the Defendants' actions violated Ind. Code § 35-43-5-11, which prohibits a person from knowingly or intentionally providing false information to a government entity to obtain a contract from the government entity.[3] Panther argues that Defendants falsely represented that Rahal could provide Fan Village access to ARNG in 2014, and that Defendants knew this right actually belonged to Panther. As stated, Panther did not have an exclusive right to provide sponsorship benefits to ARNG for 2014, therefore there could be no false representation regarding that right.

The Court concludes that Panther has failed to state claims for unfair competition and bid rigging based upon Defendants' actions in obtaining a sponsorship from ARNG for 2014. The

---

[3] This statute was repealed effective July 1, 2014; however, it was in effect during the time period relevant to this action.

actions alleged in the Amended Complaint were not unlawful because Panther had no right to provide sponsorship benefits to ARNG in 2014 under the terms of the 2013 Sponsorship Agreement. The motion to dismiss on Count IV is **GRANTED**.

## IV. CONCLUSION

The Court finds that the 2013 Sponsorship Agreement did not grant Panther the exclusive right to provide sponsorship benefits, including access to the Fan Village, to ARNG in 2014, and therefore Panther has failed to state claims upon which relief may be granted for breach of contract, interference with contract, unjust enrichment, conversion, unfair competition and bid rigging. For the reasons set forth above, the Motions to Dismiss ([Filing No. 55](); [Filing No. 61](); [Filing No. 63]()) are **GRANTED**, and Panther's claims are **DISMISSED with prejudice**. Further, the Motion to Dismiss for Lack of Jurisdiction ([Filing No. 49]()) filed by Defendant United States of America is **DENIED** as moot.

**SO ORDERED.**

Date: 3/25/2015

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Alexander Pape Orlowski
BARNES & THORNBURG LLP
aorlowski@btlaw.com

Robert D. MacGill
BARNES & THORNBURG LLP
rmacgill@btlaw.com

Angela Pease Krahulik
ICE MILLER LLP
krahulik@icemiller.com

David M. Mattingly
ICE MILLER LLP
david.mattingly@icemiller.com

Jenny R. Buchheit
ICE MILLER LLP
jenny.buchheit@icemiller.com

Aharon S. Kaye
KATTEN MUCHIN ROSENMAN LLP
aharon.kaye@kattenlaw.com

Charles Chejfec
KATTEN MUCHIN ROSENMAN LLP
charles.chejfec@kattenlaw.com

Hamish S. Cohen
MATTINGLY BURKE COHEN & BIEDERMAN LLP
hamish.cohen@mbcblaw.com

Debra H. Miller
MILLER & FISHER LLC
miller@millerfisher.com

James R. Fisher
MILLER & FISHER LLC
fisher@millerfisher.com

Laura Sue Reed
RILEY BENNETT & EGLOFF LLP
lreed@rbelaw.com

Sarah Tuohy MacGill
RILEY BENNETT & EGLOFF LLP
smacgill@rbelaw.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE
shelese.woods@usdoj.gov